

Cynthia Wright
5011 Wewatta St. SW
Atlanta, GA 30331
Phone: 470-419-1807
Email: jerai_d@yahoo.com

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA
### FILING DATE TBD

| | |
|---|---|
| CYNTHIA WRIGHT<br><br>PLAINTIFF,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, LLC, EQUIFAX INFORMATION SERVICES, LLC; TRANSUNION, LLC, FINGERHUT/WEBBANK, SELF FINANCIAL/LEAD BANK, ONE MAIN, GREAT LAKES CREDIT UNION, DUVERA, FIRST PREMIER BANK, OMEGA RMS, LLC, AND A PLUS LOANS LLC.<br><br><br>DEFENDANTS. | CIVIL ACTION NO. : _____<br><br>COMPLAINT FOR VIOLATIONS OF FAIR CREDIT REPORTING ACT<br><br>DEMAND FOR JURY TRIAL<br><br>**1:25-CV- 0175** |

### PLAINTIFF'S ORIGINAL PETITION/COMPLAINT

Plaintiff Cynthia Wright ("Plaintiff") brings this action on an individual basis, hereby submits

her Complaint and Demand for Jury Trial ("Complaint") against Defendant Experian

("Experian") Equifax Information Services, LLC. ("Equifax"), TransUnion, LLC

("TransUnion") (collectively, the Defendants CRAs); Fingerhut/WebBank

("Fingerhut/WebBank"), and Self Financial/Lead Bank ("Self Financial/Lead Bank"), One Main

("One Main"), Great Lakes Credit Union ("Great Lakes Credit Union"), Duvera ("Duvera") First

Premier Bank ("First Premier Bank"), Omega RMS, LLC (Omega), and A Plus Loans, LLC (A

Plus) (collectively, the "Defendants all Furnishers)", alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U. S. C § 1681 *et seq.*

## **INTRODUCTION**

1.  This is an action for actual, statutory, and punitive damages brought by a consumer pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U. S. C. § 1681, *et seq.* (the "FCRA")

2.  The FCRA was enacted by Congress to promote the accuracy and fairness of credit reporting. The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system. parties' rights to a jury trial or judge trial of claims and disputes. ii) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers. iii) consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers. iv) There is a need to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy. 15 U. S. C. § 1681.

3.  The FCRA requires data furnishers to provide accurate information to credit reporting agencies and to conduct a proper investigation of the disputed information. 15 U. S. C. § 1681s-2(b).

4.  After discovering inaccuracies on their consumer report, Plaintiff disputed it multiple times. Defendants (CRAs) failed to correct the errors, nor did Defendants (all Furnishers). As a result of these errors, Plaintiff was denied credit.

5.  Plaintiff brings this case for all Defendant failures and seeks actual damages, punitive damages, and attorney's fees and costs, if applicable, and all other relief available at law.

## JURISDICTION AND VENUE

6. The claims asserted in this complaint arise under 15 U. S. C. §§1681e, 1681i, and 1681s-2(b) of the FCRA. This Court has jurisdiction over the subject matter of this action under 28 U. S. C. §1331 and 15 U. S. C. §1681p.

7. This Court has jurisdiction over Plaintiff's claims as they are within the Court's jurisdictional limits.

8. Venue is proper pursuant to 28 U. S. C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

9. Plaintiff Cynthia Wright ('Plaintiff'), hereby submits her Complaint and Demand for Jury Trial Jury Trial ("Complaint"), by and through undersigned possibly undersigned counsel against Defendants Experian Information Solutions, Inc. ("Experian"), TransUnion, LLC ("TransUnion") Equifax Information Services. LLC ("Equifax Information Services, LLC") Fingerhut/WebBank ("Fingerhut/WebBank"), Self Financial/Lead ("Self Financial/Lead Bank"), One Main ("One Main"), Great Lakes Credit Union ("GLCU"), Duvera ("Duvera"), First Premier Bank ("First Premier Bank"), Omega RMS, LLC (Omega), and A Plus Loans, LLC (A Plus) (with all defendants collectively, "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S. C. § 1681 *et seq*.

10. Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at this District, such that personal jurisdiction is established.

## PARTIES

11. Cynthia Wright (hereinafter "Ms Wright or Plaintiff") is a resident of the state of Georgia, a natural person, and a "consumer" as that term is defined in 15 U. S. C. § 1681a(c).

12. Defendant Experian is a "consumer reporting agency" as that term is defined under 15 U.S.C § 1681a (f) and (p). Experian is incorporated in Ohio and it maintains its principal place of business is 475 Anton Boulevard, Costa Mesa, California 92626. Experian is registered to accept service through CT

Corporation System, % CT Corporation System, 289 South Culver St., Lawrenceville, GA 30046. Defendant Experian is engaged in the business of assembling and disseminating credit reports concerning consumers, as defined in 15 U. S. C. § 1681a(d)(1) of the Fair Credit Reporting Act, to third parties.

13.   Defendant Equifax is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681, *et seq.* ("FCRA"), 15 U.S.C § 1681a(f) and (p). Equifax is incorporated in Delaware and its principal place of business is located at 1550 Peachtree Street, NW, Atlanta, GA 30309. Equifax is registered to accept service through Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092. Defendant Equifax is engaged in the business of assembling and disseminating credit reports concerning consumers, as defined in 15 U. S. C. § 1681a(d)(1) of the Fair Credit Reporting Act, to third parties.

14.   Defendant TransUnion is a "consumer reporting agency" as that term is defined under 15 U.S.C § 1681a (f) and (p). TransUnion is incorporated in Delaware and its principal place of business is located at 555 West Adams Street, Chicago, IL 60661. TransUnion is registered to accept service through Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301. Defendant TransUnion is engaged in the business of assembling and disseminating credit reports concerning consumers, as defined in 15 U. S. C. § 1681a(d)(1) of the Fair Credit Reporting Act, to third parties.

15.   Defendant Fingerhut/WebBank is a "person" as that term is defined by 15 U. S. C. § 1681a(b). Defendant is also a "furnisher" as used in the FCRA, and specifically defined in 12 CFR 1022.41. Fingerhut & Co, Inc is incorporated in Minnesota, and its principal place of business is located at 6250 Ridgewood Rd., St. Cloud, MN 56303.

16.   Defendant Fingerhut/WebBank is alleged to be a "person" as that term is defined by 15 USC 1681(b). Defendant is also alleged to be a "furnisher" as used in the FCRA, and specifically defined in 12 CFR 1022.41 (c).

17.   However, Fingerhut/WebBank, as reported on Plaintiff's Experian, Equifax, and TransUnion reports, is "not" incorporated to conduct business in the State of Georgia as per Autumn, customer service representative for the Georgia

Corporations Division/Georgia Secretary of State. The telephone call was placed on December 20, 2024 to 404-656-2817 @11:56 am.

18. Fingerhut/Webbank is incorporated in the State of Utah, headquartered in Salt Lake City, Utah, and its principal place of business as 215 South State Street, Suit 1000, Salt Lake City, UT 84111. Fingerhut/WebBank is registered to accept service through Corporation Service Company, 15 West South Temple, Suite 600, Salt Lake City, UT 84101.

19. Defendant Self Financial/Lead Bank is a "person" as that term is defined by 15 U. S. C. § 1681a(b). Defendant is also a "furnisher" as used in the FCRA, and specifically defined in 12 CFR 1022.41(c). Self Financial/Lead Bank & Co, Inc is incorporated in Texas, and its principal place of business is located at 901 E. 6th Street, Suite 400, Austin, Texas 78702.

20. However, Self Financial/Lead Bank as reported on Plaintiff's Experian, Equifax, and TransUnion reports, is "not" incorporated to conduct business in the State of Georgia as per Autumn, customer service representative for the Georgia Corporations Division/Georgia Secretary of State. The telephone call was placed on December 20, 2024 to 404-656-2817 @11:59 am.

21. Self Financial/Lead Bank is incorporated in the State of Missouri, headquartered in Austin, Texas, and its principal place of business as 901 E. 6th Street, Suite 400, Austin, TX 78702-3206. Self Financial partners with Lead Bank, a community bank based in Kansas City, Missouri. Self Financial/Lead Bank is registered to accept service through Cogency Global, Inc., 406 N. Main Street, Suite B, Rolla, MO 65401-3154.

22. Defendant OneMain Consumer Loan, Inc is a "person" as that term is defined by 15 U. S. C. § 1681a(b). Defendant is also a "furnisher" as used in the FCRA, and specifically defined in 12 CFR 1022.41. OneMain Consumer Loan, Inc is incorporated in Georgia , and its principal place of business is located at 601 NW Second Street, Evansville, IN 47708. Defendant, OneMain Consumer Loan, Inc is alleged to be a "person" as that term is defined by **15 USC 1681(b)**. Defendant is also a "furnisher" as used in the FCRA, and specifically defined in 12 CFR 1022.41 (c).

23.    OneMain Consumer Loan is incorporated in the State of Illinois, headquartered in Evansville, IN, and its principal place of business as 601 NW Second Street, Evansville, IN 47708. OneMain Consumer Loan, Inc is registered to accept service through CT Corporation System, 289 S. Culver Street, Lawrenceville, GA 30046-4805.

24.    Defendant Great Lakes Credit Union (GLCU) is a "person" as that term is defined by 15 U. S. C. § 1681a(b). Defendant is also alleged to be a "furnisher" as used in the FCRA, and specifically defined in 12 CFR 1022.41(c).

25.    GLCU is a financial institution located in the State of Illinois. According to the Illinois Secretary of State, GLCU is not registered to conduct business. GLCU is, however, licensed under the Illinois Department of Finance and Professional Regulation (IDFPR). License # CU.0000494

26.    According to the Georgia Secretary of State, as well as Georgia's Department of Banking and Finance. GLCU is not registered or licensed to conduct business in the State of Georgia.

27.    Therefore, Great Lakes Credit Union can not receive service in Georgia because there is no business status or information listed or found.

28.    Defendant Duvera Billing Services, LLC is a "person" as that term is used in 15 U. S. C. § 1681a(b). Defendant is also a "furnisher" as used in the FCRA, and specifically defined in 12 CFR 1022.41(c). Duvera is incorporated in Georgia , and its principal place of business is located at 3220 Executive Ridge, Suite 200, Vista, CA 92081.

29.    Defendant Duvera Billing Services, LLC is incorporated in the State of California, headquartered in Vista, CA, and its principal place of business as 3220 Executive Ridge, Suite 300, Vista, CA 92081. Duvera Billing Services, LLC is registered to accept service through Registered Agent Solutions, Inc, 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076.

30.    Defendant First Premier Bank (First Premier) is a "person" as that term is used in 15 U. S. C. § 1681a(b). Defendant is also a "furnisher" as used in the FCRA, and specifically defined in 12 CFR 1022.41(c). First Premier is incorporated in South

Dakota , and its principal place of business is located at 500 South Minnesota Ave, Sioux Falls, SD 57104.

31. According to the Georgia Secretary of State and Georgia Department of Banking and Finances. Defendant First Premier Bank is not registered or licenced to conduct business in the state of Georgia where Plaintiff resides.

32. According to both agencies mentioned in the above paragraph, it is required for all financial institutions to be registered and licensed to conduct business in the State of Georgia to ensure compliance with all local, state, federal laws, and regulations.

33. Defendant Omega RMS, LLC (Omega) is a "person" as that term is used in 15 U. S. C. § 1681a(b). Defendant is also a "furnisher" as used in the FCRA, and specifically defined in 12 CFR 1022.41(c). Omega is incorporated in the State of Missouri, and its principal place of business is located at 221 Bolivar St., Jefferson, MO 65101.

34. According to the Georgia Secretary of State, Omega RMS, LLC is not registered in the State of Georgia to conduct business in the state of Georgia, where Plaintiff resides.

35. Defendant A Plus Loans, LLC (A Plus) is a "person" as that term is used in 15 U. S. C. § 1681a(b). Defendant is also a "furnisher" as used in the FCRA, and specifically defined in 12 CFR 1022.41(c). A Plus "was" incorporated in the State of Florida, with its principal place of business location as 4330 W. Broward Blvd, Suite C, Plantation, FL, 33317.

36. However, according to the Georgia Secretary of State, Defendant A Plus is no longer registered to legally conduct business, which is a requirement in the State of Georgia.

37. According to the Georgia Secretary of State, Defendant A Plus registration to conduct business in the state of Georgia has been revoked, and is not registered to conduct business in the state where Plaintiff resides.

38. Any business or organization who fails to comply with state laws, to be registered in that state is not only violating state laws, but consumer protection

laws as well, to include federal consumer protection laws. Therefore, this should be considered as unfair and deceptive business practice on all levels.

## THE ROLES AND REGULATION OF THE CREDIT REPORTING AGENCIES

39. Consumer reporting agencies assemble and evaluate credit, public record, and other consumer information into consumer reports or "credit reports."(See 15 U. S. C. § 1681a(d) (defining "consumer report"); *see also* 15 U. S. C. § 1681 (recognizing "a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy").

40. Among other things, the FCRA "require[s] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to confidentiality, *accuracy,* relevancy, and proper utilization of such information." 15 U. S. § 1681(b)

41. At all times relevant to this Complaint, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

42. Consumer reporting agencies assemble and evaluate credit, public record, and other consumer information into consumer reports or "credit reports."

43. The damages that Plaintiff bears as a result of the inaccurate, incomplete, and untimely reporting by Experian, Equifax, and TransUnion cannot be rectified by merely updating the affected credit reports.

44. Defendant Experian, Equifax, and TransUnion continued to provide inaccurate credit scores, and consumer reports continued to provide inaccurate credit scores and consumer reports when it knew or should have known that Plaintiff consumer reports and credit scores were inaccurate. Thus, Experian, Equifax, and TransUnion acts described herein constitute a pattern or practice of knowing violations, as set forth in Section 621(a)(2)(A) of the FCRA, 15 U. S. C. § 1681s(a) (2)(A). (See *"Equifax Sent Lenders Inaccurate Credit Scores on*

*Millions of Customers"* article dated August 2, 2022, article dated August 2, 2022)

45.    Plaintiff seeks to fully recover FCRA statutory damages allowable by law. In addition, Plaintiff also seeks injunctive relief requiring Defendant(s) to inter alia (i) conduct a full-system audit to properly identify which customers scores and consumer reports are affected by them not having reasonable procedures to ensure maximum possible accuracy, (ii) provide a sum of money sufficient to provide quality credit repair services to the Plaintiff for their respective lifetimes; (iii) establish a fund ( in an amount to be determined) to which such person may apply for reimbursement of time and out-of-pocket expenses they incurred as a result of selling inaccurate consumer reports and credit scores to business clients and the earnings on such gross revenue.

46.    Plaintiff has standing to sue all Defendants as a result of violations of federal and state statutes, including the FCRA, as detailed herein. Further, all Defendants acts and/or omissions, willful disregard and conduct, and want of ordinary care, and willful noncompliance. Plaintiff has suffered actual injury and will continue to suffer economic damages and other injury, and actual harm as described herein.

47.    Plaintiff should consider bringing a lawsuit as a class action on behalf of Plaintiff individual and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23.

## FACTUAL ALLEGATIONS

48.    The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

49.    The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures" for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and

equitable to consumer, with regard to the confidentiality, accuracy, relevancy, and and proper utilization of such information. 15 U. S. C. 1681(b)

## PROCESSING OF CREDIT INFORMATION

50. Experian, Equifax, and TransUnion  receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

51. These sources are known as "Furnishers" within the credit reporting industry and under the FCRA.

52. Experian, Equifax, and Transunion collects information from thousands of furnishers.

53. The process by which Experian, Equifax, and TransUnion receives, sorts, and stores information is largely electronic.

54. Furnishers report credit information to Experian, Equifax, and TransUnion through the use of coded tapes that are transmitted to Equifax on a monthly basis through software known as Metro 2®.

55. Experian, Equifax, and TransUnion takes credit information reported by furnishers, and creates consumer credit files.

56. Experian, Equifax, and TransUnion maintain credit files on more than 200 million consumers.

57. Credit files are updated electronically by the "Furnisher" to reflect new information regarding the reported accounts (sometimes referred to as "tradelines" within the industry).

58. Experian, Equifax, and TransUnion are aware that different consumers can have similar names.

59. Experian, Equifax, and TransUnion are also aware that different consumers can have similar social security numbers.

60. None of Experian, Equifax, and TransUnion dispute processing procedures attempt anything other than forwarding a coded "ACDV" to its data furnisher.

61.    The only human intervention allowed by Experian, Equifax, and TransUnion in
       its investigation of Plaintiff's dispute was to determine the appropriate two- digit
       code to enter in a computer message to its furnishers. No independent discretion
       was exercised. No information was "considered" in the investigation. Equifax's
       agents acted only as data entry clerks to transfer Plaintiff's disputes of whatever
       detail into one of the four primary disputes codes used 90% of the time.

62.    In fact, Experian, Equifax, and TransUnion describes its own investigation
       procedures as follow: (a) The consumer contacts Experian, Equifax, and
       TransUnion by phone, mail or the internet to request an investigation: (b)
       Experian, Equifax, and TransUnion notifies the creditor or public records vendor,
       via a Consumer Dispute Verification (CDV) form or an Automated Consumer
       Dispute Verification (ACDV) form of the consumer's investigation request; (c)
       There credit grantor checks their files or the public record vendor revisits the
       court to confirm or deny the consumer's claim. The ACDV is returned to
       Experian, Equifax, and TransUnion with a response; (d)  Experian, Equifax, and
       TransUnion sends the consumer by mail, a Consumer Disclosure File (CDF)
       with the creditors or vendor's response.

63.    What's missing from these procedures is the exercise of any discretion. In
       processing Plaintiff's disputes, Experian, Equifax, and TransUnion deferred
       entirely to or "Parrotted" its furnishers and never examined what it could do if
       anything to prevent information disputed and removed from being reinstated or
       being merged into Plaintiff's credit file in the first place.

64.    This "procedure" for investigation consumer disputes is intentional and
       Experian, Equifax, and TransUnion knowingly chooses not conduct
       investigations into consumers disputes process for business reasons, i..e. In order
       to save money and process disputes quickly without ever having to conduct an
       actual investigation.

65.    Rather than increase resources and attention to develop solutions to inaccuracy
       problems such as those suffered by Plaintiff, consistently cut per capital
       resources for resolving consumer disputes in order to maximize profits.
       Experian, Equifax, and TransUnion charges vendors to process each dispute it

receives through regular mail; however, the CRA's through e-OSCAR charge no less than $.25 from the creditor for each ACDV dispute form sent electronically. e-OSCAR is a web-based, Metro 2 compliant, automated system that enables Data Furnishers (DFs), and Credit Reporting Agencies (CRAs) to create and respond to consumers credit history, in accordance with the Fair Credit Reporting Act. The second process, referenced briefly above, is the "Automated Universal Dataform (AUD). AUD enables data furnishers to submit updates or corrections to consumer's credit information directly to the CRA's. Therefore, if a consumer disputes five inaccurate accounts, Experian, Equifax, and TransUnion would pay its vendors a fraction of the gross ($1.25) it charges its creditor through e-OSCAR. In fact, the more automated disputes it sends out, the more revenue Experian, Equifax, and TransUnion generates. It is this "REVENUE" opportunity that in 2005 caused the national reporting agencies, including Experian, Equifax, and TransUnion to move the e-OSCAR electronic system from their non-profit lobbying organization, the CDIA, to a new format profit company, Online Data Exchange, LLC.

66. Experian, TransUnion, and Equifax actually employ quota systems to force employees to process disputes rapidly and without meaningful inquiry.

67. Experian, TransUnion, and Equifax use a system to measure the number of "converted units" produced by each employee. Each task is assigned a different value. To meet Experian, TransUnion, and Equifax minimum standards to pay incentive if processing the most difficult of disputes- fraud and identity theft claims, the employee would have to perform at least 98.25 per day, or 13.1 hours.

68. Experian, TransUnion, and Equifax knows that from time-to-time consumers who fall victim to known refusal to investigate consumer disputes, as is the case with the Plaintiff, will file lawsuits against them. However, Experian, TransUnion, and Equifax accept that risk and costs associated with those suits as the cost of doing business. Experian, TransUnion, and Equifax simply conclude that it costs less to pay a few consumers who file lawsuits than it would cost to actually investigate disputes. Experian, TransUnion, and Equifax know this "procedure" violates the FCRA.

69. Ultimately, Experian, Equifax, and TransUnion (having conducted no investigation of its own) simply parroted whatever its furnishers provided in response to Plaintiff's disputes.

70. Within the time frame of disputing, Experian, Equifax, TransUnion, and/or other national consumer reporting agencies prepared and distributed one or more consumer reports as the term is defined by Section 15 U. S. C. § 1681a(d) of the FCRA, pertaining to Plaintiff that contained misleading, incomplete, and/or inaccurate information.

71. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

## CAUSES OF ACTION
## COUNT 1
## WILLFUL VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U. S. C. 1681 §, *et. seq*

72. According to the FCRA, each consumer is provided with a "Summary of Rights". One of those rights specifically states that a consumer may hold a consumer reporting agency, furnisher, and in some cases a user of a credit report liable for violations of the FCRA, and may sue for those damages in any state or federal court. Those violations pertain to any willful non-compliance or negligence for failing to comply with procedures of the FCRA.

73. Since July of 2022, Ms Wright has with great effort submitted disputes directly with Defendants Experian, Equifax, and TransUnion of inaccurate information discovered after reviewing her report from annualcreditreport.com.

74. Ms Wright discovered that according to Section 623 (a)(7)(A) of the FCRA, the following account were in fact, in violation of the FCRA: Fingerhut/WebBank (Acct# 626992400654****); Self.Inc (Acct# 29128****); One Main (Acct # 423232100913****); Great Lakes Credit Union x 2 (Acct # 360634XXXX); Nelnet x 2 (Acct# 18880****); Duvera (Acct #12651); First Premier Bank (Acct

# 517800678214****); Omega (Acct #6921****); and A Plus (Acct # 0061****).

75.   Delinquencies, late payments, and other defaults reported on a credit report under the FCRA are considered as "Negative Information". Under Section 623(a)(7)(G), the term "Negative Information" is defined as or *means information concerning a customer's delinquencies, late payments, insolvency, or any form of default*.

76.   However, in order for any furnisher of information to furnish a 30 day late payment to any consumer reporting agency, the consumer's account MUST be at least 30 days late past the "due date" on the account. If an account is 29 days or less late, it cannot be reported to any consumer reporting agency as being 30 days late, as that would be inaccurate reporting and must be corrected. However, the creditor could in fact charge late fees on the account.

77.   One of Plaintiff's Great Lakes Credit Union (GLCU) accounts is a "bi-weekly" account, with each payment during the month having its own "30-day" period. However, GLCU unfairly reported "30-Day" late payments several times on Plaintiff's credit report when the account was not "30-Days" past the "due date".

78.   Plaintiff's second GLCU account was disputed on several occasions with Defendants CRA under the "Responsibilities of Furnishers Rules". Plaintiff specifically informed Defendants that she did not receive the written notification that all furnishers who are financial institutions are required to provide to customers either prior to furnishing such negative information, or not later than 30 days after furnishing the information to a consumer reporting agency described in Section 603(p) of the FCRA.

79.   However, Defendants refused to take the "relevant information" submitted by Plaintiff into consideration, as Section 611(a)(4) of the FCRA requires. Instead, the Defendant CRA solely relied on the investigation results of the furnisher provided. However, the assurance of maximum possible accuracy lies on the consumer reporting agency's duties and responsibilities.

80.   Plaintiff's Duvera account was reporting on Equifax and TransUnion. Upon submitting disputes to both consumer reporting agencies. The account was

deleted from Equifax, but verified as accurate by TransUnion. Therefore, Defendant Duvera failed to comply with duties and responsibilities of a furnisher as written in Section 623 (b)(1)(D) by reporting those results to all other consumer reporting agencies it furnished the information to. Plaintiff also submitted a direct notice of dispute to Defendant Duvera, requesting for compliance of the FCRA by reporting the deletion to TransUnion. Plaintiff then submitted yet another dispute to TransUnion, informing them of the noncompliance of Duvera, along with the investigation results she received from Equifax. However, Defendant TransUnion did not take the relevant information submitted by Plaintiff in consideration of its reinvestigation. Therefore, the information remains on the Plaintiff's report which is to be considered as noncompliant with the FCRA. TransUnion has in fact, failed to comply with the FCRA procedures.

81.    Ms. Wright's Omega account has been disputed through Defendant TransUnion under the FDCPA on several occasions. Ms. Wright exercised her rights under the FCRA 611(a)(4) by providing "relevant information" to TransUnion. Ms. Wright notified TransUnion in her disputes that the Defendant Omega did not provide "verification of the alleged debt" upon her direct dispute to Omega, and the balance was unverifiable without proper verification. Without prevail, as each investigation result by Defendant TransUnion claimed that the disputed information was "Verified as accurate"; however the Plaintiff received no such verification.

82.    Upon being notified by Ms. Wright that her dispute was under the FDCPA. In order to be Metro 2 compliant. Defendant TransUnion was to update the account as "Consumer Disputes Under FDCPA". However, no such update took place. Therefore, TransUnion did in fact fail to accurately update the account, as required under the FCRA.

83.    In a continuous effort to resolve the issue. On or around May 2024, Plaintiff also submitted a complaint to the CFPB (Complaint # 240513-14342564). In her complaint, Plaintiff informed the CFPB that Defendant Omega never responded to her direct dispute of the alleged debt, and she never received "verification of

debt". However, upon the completion of the CFPB's investigation, Defendant Omega informed the CFPB that "validation of debt" was provided to Ms. Wright. In reality, Defendant Omega never provided any such verification, nor did Defendant TransUnion receive any such verification. Therefore, Defendant Omega provided false information to the CFPB. Therefore, TransUnion failed to conduct a reasonable investigation upon receiving relevant information submitted by Ms. Wright. What Defendant Omega was referring to was the "Validation of Debt Notice" as required under the FDCPA 809(a).

84.   Validation of debt is not to be construed as "Verification of debt". Within the procedures of "Validation of Debt" under the FDCPA 809(a)(4)(5);(b), a consumer may request for "verification of debt" from the debt collector.

85.   Therefore "validation" and "verification" are not the same. Merely providing the required information under Section 809(a) is insufficient for "verification", which would include account records, payment records, original contract, and much more.

86.   As written in the FDCPA 809(a)(3) the debt would be considered as "valid" by the "debt collector". However, Ms Wright's dispute pertained to the "verification of debt". Defendant Omega has not provided any such verification of the alleged debt, other than the Notice of Debt. Ms Wright informed Defendant TransUnion of this in several disputes. Therefore, TransUnion failed to comply with the procedures of the FCRA 611(a) upon receiving Ms. Wright's disputes.

87.   Upon receiving a direct notice of dispute from a consumer as outlined in the FCRA, Section 623(a)(8)(D). A furnisher of information, such as Defendant Omega, is to comply with investigation procedures clearly outlined in the FCRA, Section 623(a)(8)(E). This includes completing such investigation in the same time frame as a consumer reporting agency, which is within 30 days of receipt of the dispute.

88.   Plaintiff submitted several disputes to Defendant Omega, requesting not only compliance with the FCRA 623(b)(1)(E), which was to "delete" the unverified account which is reporting an "unverified" collection amount for $12,870.

89. However, on each occasion, Defendant Omega failed to comply with investigation procedures of the FCRA, as a furnisher of information. Defendant Omega failed to comply with FDCPA procedures by continuously attempting to collect a debt that it refused to provide "verification" of such alleged debt upon the request of the Plaintiff.

90. Ironically, upon Plaintiff submitting disputes through Defendant TransUnion, clearly informing TransUnion that the Defendant Omega failed to provide requested "verification of the alleged debt". Plaintiff received investigation results from Defendant TransUnion informing her that Defendant Omega has "verified the disputed information as accurate".

91. Defendant Omega responded to the disputes received from Defendant TransUnion and made claims of "verification". Yet when Ms. Wright requested the "verification", Omega did not provide any such verification.

92. It is evident that based on the poor conduct of Defendant TransUnion, as a consumer reporting agency, and Defendant Omega, as a data furnisher. A reasonable investigation of the disputed information and with respect to the disputed information was not conducted. Therefore, the reported and disputed information does in fact, violate the FCRA and the FDCPA on several counts.

93. Plaintiff's A Plus account, which contained several inaccuracies and incompleteness, included the incomplete Date of 1st Delinquency. The reporting of this information is imperative in order to determine the "accurate" seven (7) year statute of limitations for credit reporting, as mentioned in the FCRA, Section 605(c).

94. The account is also reporting inaccurate Payment Status by Defendant Experian. This is not to be confused as "Account Status", as these statuses are different fields on a consumer report.

95. According to Defendant Experian's own "Payment History" legend to consumers. The "Payment Status" code "CLS" is to be used when an account has been "Closed". This "payment status code" is not limited to be used when an account has been closed "positively". Regardless if the account closed positively or negatively, the "accurate" payment status code is to be "fairly" utilized. This

would prevent the unfairness of "Charge-Off" (CO) being reported in the Payment History each month as the last payment status, when in fact, "Closed" was the last "payment status".

96.    Therefore, an account is not closed, then charged-off. A charge-off means that the creditor doesn't expect any further "payments" from the Plaintiff. This led to the creditor making a decision to "charge-off" the "account, and then close the account. Once an account has been "closed", there is "no activity" on a closed account. However, by not reporting the "CLS" status as listed in the legend, by Defendant Experian. That is in fact, inaccurate information, as Closed, was the last payment status of the account.

97.    This would be equivalent to a store owner who doesn't "expect" any more customers for the day, and makes a decision to close his/her store. The store owner didn't close the store first, then decided that no further customers would come.

98.    Therefore, the Plaintiff did not dispute whether the account charged-off or not, but instead the reporting of the "payment status", as a "Closed" account's payment status should be reported as "CLS" in the appropriate month it was actually closed, regardless if it was by the credit grantor or Plaintiff. Then the "payment code" of "No Data" (ND) for each month following the "CLS", as there is "No Activity" on a "Closed" account.

99.    The Payment Status Code "ND" (No Data) is also listed in Defendant Experian's "payment legend" for consumers, such as Plaintiff to use and understand. When and if Defendant Experian fails to use its own codes appropriately and accurately, then it would in fact be inaccurate information as the Plaintiff disputed; or Defendant Experian provided false, misleading, and deceptive information by not using the codes it provides in its legend to consumers, such as the Plaintiff.

100.    It is imperative for the appropriate "Payment Status Codes" to be used when reporting payment information, as this information, which is "Payment History" for credit scoring, has the largest impact on the Plaintiff's credit ratings.

101. An example of an accurately reported charged-off account's "payment history" and "codes" would be as follows: "30,60,90,120,150,180,CO,CLS,ND"

102. This would then allow the account to properly and fairly age from the date of the last reported "Negative Information", which is the "CO" code in the "Payment History" section of the consumer report.

103. The term "Negative Information" is defined in the FCRA, Section 623(a)(7)(G):

104. (i) The term "negative information" means information concerning a customer's delinquencies, late payments, insolvency, or any form of default.

105. Be advised, Defendant A Plus business has been revoked and dissolved in its home state, as well as the state where Plaintiff resides. Then there is no legal way for Defendant Experian could make legal claims of "verifying the accuracy" with Defendant A Plus. Based on the information provided by both the States of Florida and Georgia's Secretary of State. The business name and operation of the business name A Plus Loans, LLC doesn't exist.

106. Plaintiff has also submitted several complaints to the Consumer Financial Protection Bureau (CFPB) regarding these inaccuracies and non-compliance. However, this effort was also without prevail, as each Defendant "CRA" verified that the disputed information was accurate and in compliance with the FCRA, even with the CFPB. Therefore, the non-compliant information remained on Plaintiff's credit report.

107. The reported late payments on the Plaintiff's credit report by Experian, Equifax, and TransUnion are to be considered as "negative information". However, under Section 623 (a)(7)(A)(i), the FCRA clearly has procedures in which furnishers of information that are "financial institutions", such as each "furnisher" mentioned in this complaint, are "required" to follow when furnishing any "negative information" as defined in the FCRA to any consumer reporting agency . Also, according to the FCRA Section 623 (b)(1)(E), it is clearly written "for purposes of reporting to a consumer reporting agency only". Which means the information is not to determine financial obligation, or based solely on any financial obligations. It simply pertains to whether the information that is being reported

or furnished to a consumer reporting agency is in compliance with the FCRA or not.

108.  The failure of any "user, furnisher, or even consumer reporting agency" to comply with any "procedures" within the FCRA, would mean non-compliance of the FCRA. Therefore, any reported late payment may in fact, be accurate. However, the failure of the furnishers to comply with "procedures" to furnish such information to a consumer reporting agency would mean that the information cannot be furnished nor reported to any consumer reporting agency.

109.  Section 623(a)(7)-(A) Notice to Consumer Required (i) In general. If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency described in section 603(p) furnishes negative information to such an agency regarding credit extended to a customer, *the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.*

110.  Also under this Section of the FCRA, is the time frame for a furnisher that is a financial institution to provide the written notification to the customer.

111.  Section 623(a)(7) (B) Time of Notice (i) In general. The notice required under subparagraph (A) shall be provided to the customer prior to, or no later than 30 days after, furnishing the negative information to a consumer reporting agency described in section 603(p).

112.  According to Section 602 (a)(4) of the FCRA, CRA (Consumer Reporting Agencies) have "grave responsibilities" to ensure "fairness and impartiality". Grave responsibilities shouldn't have to be explained or defined in order for any CRA to fully understand the importance of performing its duties and responsibilities as a CRA. Credit reporting has been around for fifty (50) years. Therefore, there is no acceptable reasoning or excuse any CRA can utilize for non-compliance, upon receiving direct or indirect disputes from any consumer.

113.  The amount of effort on the Plaintiff's part to have the information on her credit report modified, deleted or permanently blocked, as per procedures of the FCRA has been beyond exhausting.

114.    Plaintiff submitted valid disputes to Defendants Experian, Equifax, and TransUnion of the above mentioned late payments. Plaintiff "specifically" identified the late payments that were being disputed and provided Defendants with "relevant information" with her dispute. The relevant information was that she did not receive the written notification the Defendants (all furnishers) were "required" to provide to her "in writing" within the time specified in the FCRA.

115.    Under Section 611(a)(4) of the FCRA, as a consumer reporting agency receiving a direct or indirect notice of dispute from Plaintiff. Defendants Experian, Equifax, and TransUnion were to take ALL "relevant information" submitted by the Plaintiff in consideration of its investigation, with "respect to the disputed information". This would mean that Defendants Experian, Equifax and TransUnion were to take in consideration that the consumer did not receive the "required" notices, under the above mentioned Section of the FCRA, that Defendants (all furnishers) were to provide to her.

116.    As a consumer reporting agency receiving a notice of dispute from any consumer. Experian, Equifax and TransUnion had a duty to comply with Section 611(a)(5)- Treatment of Inaccurate or Unverifiable information, as the disputed information was in fact, unverifiable.

117.    According to Section 611(a)(5) Treatment of Inaccurate or Unverifiable Information (A) In general. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall – (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

118.    However, Defendants "CRAs" decided "not" to perform its duties under Section 611(a)(5). Instead, Defendants (CRA) passed its responsibilities to the Defendants (furnishers) of information, under Section 611(a)(2) of the FCRA.

119.    Under this Section, the Defendants "CRAs" were required to give "prompt notice of dispute" to Defendants "furnishers". who were the furnishers of the disputed

information. Nevertheless, the procedures under Section 611(a)(2), as a consumer reporting agency. Experian, Equifax and TransUnion had a "duty" to provide the Defendants "furnishers" with ALL "relevant information" submitted by the Plaintiff.

120. The "relevant information" submitted by the Plaintiff to Defendants (CRAs) was the non-compliance of "procedures" of the reported "negative information", as the Defendants who are financial institutions (Furnishers) were required to perform under the FCRA, Section 623(a)(7)(A).

121. The Plaintiff did not receive the "required" written notification that was to be provided by the Defendants. As a consumer, Plaintiff had the right to dispute any reported information that is either inaccurate, or incomplete, or cannot be verified.

122. If Defendants are allowed to ignore even one (1) procedure within the FCRA, then this would deem the FCRA ineffective in protecting consumers from "unfair" credit reporting. This would undermine the purpose and intent of Congress enacting the Act.

123. It is a simple procedure for any furnisher to follow. Either provide the customer with "written notification" prior to furnishing the negative information or no later than 30 days after such information is furnished. Defendants Experian, Equifax, and TransUnion had a duty to properly investigate Plaintiff's dispute by requesting the Defendants (all furnishers) to provide "verification" of providing the notice to the Plaintiff.

124. Plaintiff specifically requested verification from Defendants (all furnishers) in her dispute through Experian, Equifax, and TransUnion.

125. The Plaintiff did not dispute whether the information was accurate or inaccurate. The Plaintiff's dispute was to notify Experian, Equifax, and TransUnion that the reported "negative information" did not meet the requirements of the FCRA, due to the Defendants (all furnishers) "failure" to comply with FCRA "procedures".

126. Pursuant to the FCRA, Section 607(b)-Accuracy of Report, as a consumer reporting agency, Defendants Experian, Equifax, and TransUnion had a "duty to assure maximum possible accuracy". These duties cannot be delegated to the

furnishers of information. Section 607(b) specifically places this duty on consumer reporting agencies and does not mention furnishers of information.

127.   In order to fairly and accurately assure "maximum possible accuracy". Defendants Experian, Equifax, and TransUnion cannot solely rely on the claims of accuracy from furnishers of information. It is imperative for a consumer reporting agency to perform their duties as a consumer reporting agency by conducting its own investigation of the information that was disputed by the Plaintiff, as well as ensuring furnishers provide "actual verification" of accuracy and completeness.

128.   A reasonable investigation, as described in the FCRA for consumer reporting agencies, such as Defendants Experian, Equifax, and TransUnion cannot take place if claims of accuracy relied solely on the furnishers of information claims of accuracy.

129.   During Defendants Experian, Equifax, and TransUnion investigations, if Defendants (furnishers) were unable to provide "verification" of the disputed information. Then as a consumer reporting agency, Defendants (CRAs) had a duty to either modify or delete the item to meet FCRA requirements in order to remain in compliance with the FCRA, Section 611 (a)(5).

130.   This could have been accomplished by simply "modifying" the "payment status" code in the disputed months from "30" to "ND" (No Data), which is considered as a "neutral status".

131.   No Data (ND) isn't considered as either negative or positive status for payment history. Defendants (CRAs) could have also deleted the item as it is specifically stated in the FCRA, in a language that would be understandable even to the "least-sophisticated" consumer. If deleted, then Defendants (CRAs) were to notify each Defendant (furnisher) of this action, as written in the FCRA Section 611(a)(5)(ii).

132.   At that time, if the Defendants (furnishers) did not agree with the Defendants (CRAs) actions. Under the FCRA Section 611 (a)(5)(B), Defendants (furnishers) could have complied with the FCRA and submit a "reinsertion of previously

deleted material", should each Defendant (furnisher) provide each Defendant (CRAs) with "certification of accuracy".

133. Upon receiving a notice of dispute from a consumer reporting agency, furnishers such as Defendants (furnishers) are required to perform their duties pursuant to the Section 623(b) of the FCRA.

134. Pursuant to Section 623(b)(1)(E) of the FCRA, as a furnisher of information to a consumer reporting agency. Defendants (furnishers) had a duty to either "modify the information; delete the item from the credit report; or permanently block the reporting of the information".

135. Pursuant to Section 623(a)(2) of the FCRA, as a furnisher of information, each Defendant (all furnishers) did in fact have a duty to "correct and update" any information which was inaccurate or known to be inaccurate.

136. However, instead of performing its duties as a furnisher of information pursuant to Section 623 of the FCRA by simply modifying the disputed inaccurate information to report "fairly" and in "compliance" with the FCRA on Plaintiff's Experian, Equifax, and TransUnion reports.

137. Defendants (all furnishers) blatantly disregarded "procedures", which furnishers should be completely aware of. Therefore, each Defendant (furnishers) failed to perform their duties by "willfully" continuing to provide non-compliant information to Defendants (CRAs), even after "knowing or having knowledge" that the late payment information furnished to each CRA did not meet FCRA requirements.

138. Plaintiff is frustrated, confused, and mentally stressed about the unfairness of investigation results by Defendants Experian, Equifax, and Transunion. In or around September 2024, Plaintiff submitted a notarized "Affidavit of Truth and Facts" dispute with supporting evidence to Defendants Experian, Equifax, and TransUnion.

139. Defendants (CRAs) unfairly based its duties of assuring maximum possible accuracy solely upon the Defendants "furnishers" claims of compliance, without being provided any supporting evidence by Defendant (furnishers) to substantiate any such claims.

140. To date, the information remains non-compliant to the FCRA on Plaintiff's Experian, Equifax, and TransUnion reports.

141. This willful non-compliance and negligence by Defendants Experian, Equifax, and TransUnion completely undermines the integrity of the FCRA, as well as the intent or purpose of Congress enacting the FCRA.

142. The FCRA was enacted by Congress to promote the accuracy and fairness of credit reporting) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system. parties' rights to a jury trial or judge trial of claims and disputes. ii) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers. iii) consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers. iv) There is a need to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy. *See* 15 U. S. C. § 1681.

## EXPERIAN, EQUIFAX, AND TRANSUNION ARE OBLIGATED TO ENSURE MAXIMUM POSSIBLE ACCURACY IN CONSUMER REPORTS

143. The FCRA defines consumer reports as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility in lending decisions."

144. Because of the importance of consumer report accuracy to businesses and consumer reporting agencies "shall follow to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

145.    Among these is the requirement that when preparing a consumer report, consumer reporting agencies "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U. S. C. § 1681e(b).

146.    Furthermore, the FCRA places strict obligations on credit reporting agencies such as Experian, Equifax, and TransUnion when it comes to maintaining the accuracy of consumer credit reports. According to the CFPB, "[a]ccuracy in consumer reports is of vital importance to the consumer reporting system, particularly as consumer reports play an increasingly important role in the lives of American consumers."

147.    Section 607(b) of the FCRA, 15 U. S. C. § 1681e(b), requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

148.    This includes maximum possible accuracy with respect to the information that is included on an individual's consumer report – including, but not limited to credit score itself.

149.    Each instance in which Experian, Equifax, and TransUnion have failed to comply with Section 607 of the FCRA constitute a separate violation of the FCRA for the purpose of assessing monetary damages.

150.    This includes maximum possible accuracy with respect to the information that is included on an individual's consumer report – including, but not limited to credit score itself. See Consumer Fin. Prot. Bur., Fair Credit Reporting: *Permissible Purposes for Furnishing and Using and Obtaining Consumer Reports*, 87 FR 41243 (Jul. 7, 2022), *available at* https://www.federalregister.gov/d/2022-14823/p-41.

151.    The Consumer Finance Protection Bureau has recently affirmed that, "[i]n preparing consumers reports, it is not a reasonable procedure to assure maximum possible accuracy" if a consumer reporting agency uses "insufficient identifiers to match information to the consumer who is the subject of the report." Upon

information and belief, Experian sent a dispute communicating to the data furnisher providing all relevant disputed information.

152.  The FCRA section U. S. C. § 1681s-2b contemplates three potential ending points to re-investigation verification of accuracy, a determination of inaccuracy or incompleteness, or a determination that the information "cannot be "verified." 15 U. S. C. § 1681s-2(b)(1)(E).

153.  When the consumer reporting agencies' re-investigation results said "verified" that was a violation because Defendants (all Furnishers) didn't possess account-level documentation such as proof.

154.  As the FCRA does not define "accuracy", we must look to the ordinary meaning of those terms. *See United States v. Santos*, 553 U. S. 507, 511, 128 S.Ct. 2020, 2024 (2008)) ("When a term is undefined, we give it its ordinary meaning"); *United States v. Lopez,* 590 F. 3d 1238, 1248 (11th Cir. 2009) (To ascertain the ordinary meaning, courts often turn to dictionary definitions for guidance.").

155.  The ordinary meaning of "accuracy" is (1) "freedom from mistake or error", (2) "being exact or correct", (3) "the ability to do something without making mistakes" and (4) "conformity to fact." *Erickson v. First Advantage Servs*. Corp. 981 F.3dd 1246, 1251-1252 (11th Cir. 2020).

156.  The ordinary meaning of "verification" is: (1) "evidence that establishes or confirms the accuracy or truth of something"; (2) "the process or research, examination, etc., required to prove or establish authenticity or validity"; (3) "a formal assertion of the truth of something, as by oath or affidavit", and (4) "a short confirmatory affidavit at the end of a pleading or petition." *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC,* 758 F. 3d 777, 782-83 (6th Cir. 2014) (quoting Random House Dictionary 2113 2d ed.1993) similar meaning in the legal Law's Black Dictionary 1793.

157.  A Reasonable jury could find a violation of 15 U. S. C. 1681s-2(b), Defendants (all Furnishers) "d[id] not look beyond the information contained in the [internal data file] and never consult[ed] underlying documents such as account applications"): Hinkle v. Midland (11th Cir. 2016).

158. Verification might be accomplished by uncovering documentary evidence that is sufficient to prove that the information is true. *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d, 426, 431 (4th Cir. 2004). When a furnisher reports that disputed information has been verified, the question of whether the furnisher behaved reasonably will turn to whether the furnisher acquired sufficient evidence to support the conclusion that the information was true. This is a factual question, and it will normally be reserved for trial.

159. Experian, Equifax, and TransUnion have been reporting inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that it has disseminated to various persons and credit grantors both known and unknown from at least December 2022 through the present.

160. While the Plaintiff does not deny being late on subject accounts. The dispute was based on the non-compliance of procedures Defendants (all Furnishers) were to follow upon furnishing the negative information to a consumer reporting agency as defined in Section 603 (p) of the FCRA.

161. Thus, all parties have a duty to act in good faith in performing or trying to perform each duty under the contract even if there is a concern with the other party's performance.

162. Defendants (all Furnishers) failed to conduct a reasonable investigation and continued to furnish information in which Defendants (all Furnishers) had reasons to believe was not in compliance with the FCRA, causing the Plaintiff harm.

163. Plaintiff has been forced to deal with the aggravation, humiliation, and embarrassment of a lower credit score, denial of credit, unfavorable interest rates, stress, anxiety, headaches, depression, and sleeplessness as a result of Defendant's (Experian, Equifax, TransUnion, and Defendants (all Furnishers).

164. Plaintiff has also experienced blood pressure issues due to stress she endured at the hand of the Defendants.

165. Plaintiff has experienced physical manifestations of her emotional distress. Specifically, Plaintiff has felt so distressed that at times she finds it difficult to concentrate. She has had anger outburst due to the frustration he's experienced

with respect to these circumstances. All of which has been dramatically made worse by lack of accountability from Defendants. Thus, Plaintiff has been forced to expend to correct these credit reporting issues.

166.   Plaintiff has lost an inordinate amount of sleep due to stress and distress she has faced as a result of the Defendant's conduct. With all of the other hazards going on in Plaintiff's life, the last thing she needed was additional stress caused by errors in her credit report. She frequently finds herself unable to sleep or stay asleep throughout the night because of this.

167.   All mentioned Defendant's conduct was willful and carried out in reckless disregard for a consumer's rights as set forth under section 1681s-2(b) of the FCRA.

168.   Experian, Equifax, and TransUnion are allowed to perform credit reporting services involving such sensitive consumer credit information, only if it adheres to the requirement of laws meant to protect the privacy and accuracy of such information, such as the FCRA.

169.   Indeed, according to the CFPB, "inaccurate information in consumer reports can have significant adverse impacts on consumers. These impacts are particularly concerning for prospective renters and job seekers struggling to recover from the impacts of the COVID-19 pandemic.

170.   The CFPB recently raised concerns "[c]onsumers with inaccurate information in their consumer reports may, for example, be denied credit or housing they would have otherwise received or may be offered less attractive terms than they would have offered if their information had been accurate." (*See* 15 U. S. C. § 1681a(d) (defining "consumer report"); *see also* 15 § U. S. C. 1681 (recognizing "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy").

171.   In response to Plaintiff's request for reinvestigation, Experian, Equifax, and TransUnion failed and/or refused to delete all of the inaccurate information.

172.   The continued reporting by Experain, TransUnion, and Equifax of inaccurate information is not based on independent and reasonable investigation of information provided by Defendant, but instead is based on the automated

parroting of false and baseless reporting by its furnishers, by inadequate and noncompliant procedures.

173.  Experian, TransUnion, and Equifax employees are no more than data entry clerks in the dispute and investigation process. Experian, TransUnion, and Equifax do not permit its clerk to consider or exercise discretion over a consumer's dispute.

174.  As the Seventh Circuit Court of Appeals has noted, Experian, Equifax, and TransUnion ACDV process is "cryptic and meaningless." It seems that Experian has a system problem in its limited categorization of the inquiries it receives and its cryptic notices response. For example, there is the meaningless communication (Plaintiff) received from Experian: "Using the information provided the following item was not found: Grossinger City Toyota." Another example is the opaque notice of dispute sent by Experian to U. S. Bank: "Claims Company Will Change or Delete." Moreover, in what appears to be an unresponsive form letter rather than the report of an adequate investigation into her claim, [plaintiff] was notified the "Paid/Was a repossession" notation would remain in her report and the only change would be the addition of: "Account closed at consumer's request." (See *Ruffin-Thompkins v. Experian Info. Solutions, Inc*, 422, F. 3d 603, 610-611 (7th Cir, 2005)

## CLAIMS FOR PRAYER/RELIEF
## NEGLIGENT VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U. S. C. § 1681, *et seq*
### 15 U. S. C. § 1681s-2(b)(1)(A)

175.  Plaintiff hereby incorporates Paragraph 1 through 142 as if fully stated herein.

176.  Claimant adopts and realleges the foregoing as fully restated herein.

177.  In enacting the FCRA, Congress made several findings, including that consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit information and other consumer information. *See* 15 U. S. C. § 1681(a)(4).

178.   At all relevant times, Experian, Equifax, and TransUnion are consumer reporting agencies as defined by the FCRA. Under 15 U. S. C. § 1681a(f), a "consumer reporting agency" includes any person which, for monetary fees or on a cooperative nonprofit basis, regularly engages, in whole or in part, in practice of assembling or evaluating consumer credit information or other consumer information for the purpose of furnishing "consumer reports" to third parties, and which uses any means or facility or interstate commerce for the purpose of preparing or furnishing consumer reports."

179.   At all relevant times, Experian, Equifax, and TransUnion have compiled and maintained a "consumer report" on Plaintiff as defined by the FCRA. 15 U. S. C. § 1681a(d)(1). As defined in 15 U. S. C. § 1681a(d)(1), a "consumer report" is any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used, or collected, in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for (i) credit or insurance to be used primarily for personal, family, or household purposes, (ii) employment purposes, or (iii) any other purpose authorized by 15 U. S. C. § 1681b.

180.   As individuals, Plaintiff is a consumer entitled to protections of the FCRA. 15 U. S. C. § 1681a(c).

181.   As a consumer reporting agency, Defendant was (and continues to be) required to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard, protect, and ensure the accuracy of the consumer credit information in its possession, custody, and control, including Plaintiff's credit reports and credit scores. 15 U. S. C. § 1681(b).

182.   As a consumer reporting agency, Defendant's actions or inactions violate its duties and obligations as a credit reporting agency and data furnisher under the FCRA.

183.   FCRA requires that "After receiving notice of dispute with regard to the completeness or accuracy of any information provided by a person to a consumer

reporting agency, the person shall conduct an investigation with respect to the disputed information." 15 U. S. C. § 1681s-2(b)(1)(A).

184. Defendant has violated 15 U. S. C § 1681e(b) for failing to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

185. Defendant has repeatedly created inaccurate consumer reports on Plaintiff.

186. As a direct and proximate result of Experian, Equifax, and TransUnion actions and failure to act described herein, the consumer reporting agencies have continued to report inaccurate, incomplete, and untimely consumer reports. In each instance Experian, Equifax, and TransUnion are  in violation of Section 1681e of the FCRA. Under Section 1681 of the FCRA, Experian, Equifax, and TransUnion are liable to Plaintiff for failing to comply with the requirements that a consumer reporting agency should under the FCRA, and take measures designed to avoid the unauthorized disclosure of consumer reports with inaccuracies.

187. In addition, Experian, Equifax, TransUnion, Defendants (all Furnishers) failure to comply with requirements was willful because Defendants knew or should have known, but recklessly disregarded that its information verification measures were inadequate, unreasonable, and additional steps were necessary to protect Plaintiff.

188. Experian, Equifax, TransUnion, and Defendants (all Furnishers) acts described herein constitute a pattern or practice of knowing violations, as set forth in Section 621(a)(2)(A) of the FCRA, 15 U. S. C. § 1681s(2)(A). Each instance in which Experian, Equifax, and TransUnion have failed to comply with Section 607 of the FCRA may constitute a separate violation of the FCRA for the purpose of assessing monetary damages.

189. The FCRA requires data furnishers to provide accurate information to credit reporting agencies and to conduct a proper investigation of the disputed information. 15 U. S. C. § 1681s-2(b).

190. Experian, Equifax, and TransUnion regularly engage in the compilation of credit data on consumers and sell it for a profit.

191.  Experian, Equifax, and TransUnion received each of Plaintiff's disputes.

192.  In response, Experian, Equifax, and TransUnion did not correct the errors referred to in Plaintiff's dispute 1681.

193.  Experian, Equifax, and TransUnion willfully failed to correct Plaintiff's credit report. 15 U. S. C. § 1681n.

194.  Experian, Equifax, and TransUnion negligently failed to correct Plaintiff's credit report. 15 U. S. C. § 1681o.

## COUNT II

**NEGLIGENT VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
15 U.  S.  C. § 1681, *et seq*
DEFENDANTS ("ALL FURNISHERS")**

195.  Plaintiff repeats and realleges the foregoing allegations if set forth in full herein.

196.  After a consumer submits a dispute to a consumer reporting agency, such consumer reporting agency is required to notify the furnisher of the disputed information of the dispute.

197.  Therefore, each time Plaintiff submitted a dispute to any credit bureau, each credit bureau, in turn and as required by federal statute, notified Defendants (All Furnishers) dispute.

198.  Upon receiving notice of dispute from a credit reporting agency, furnishers are required to conduct an investigation and correct the misleading information as necessary, as follows: After receiving notice to 15 U. S. C. § 1681s-2(b) of a dispute with regard to the completeness of accuracy of any information provided by a person to consumer reporting agency, the person shall- (A) conduct an investigation with respect to disputed information; (B) review all relevant information provided by the consumer agency pursuant to § 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer agency; [and] (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information.

199.   15 U. S. C § 1681s-2(b) (emphasis added).

200.   Defendants (All Furnishers) received notice of each of Plaintiff's disputes to each credit bureau, including Experian, and still failed to comply with its obligations under the FCRA.

201.   Defendants (All Furnishers)willfully, intentionally, recklessly, and/or negligently continued to furnish inaccurate information to credit reporting agencies including CRA Defendants.

202.   Upon information and belief, Defendants (All Furnishers) continued to furnish such inaccurate information, despite repeatedly admitting to Plaintiff that such reporting was accurate.

203.   As a result of Defendants (All Furnishers) negligence, Plaintiff has suffered actual damages as described herein.

204.   Defendants (All Furnishers)misconduct was a direct proximate cause of Plaintiff's damages.

205.   As a direct result of Defendants (All Furnishers) statutory violations, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover statutory, actual, and punitive damages under 15 U. S. C § 1681n and §1681o.

206.   "Plaintiff reserves the right to modify or amend lawsuit if it hires counsel before filing a lawsuit."

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues in this action so triable of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Cynthia Wright, respectfully requests that this Honorable Court enter judgments against Defendants, for the following:

a.   Declaratory judgment that Defendants violate 15 U. S. C. § 1681e(b)

b.   An award of actual damages pursuant to 15 U. S. C. §§1681n(a)(1) or 1681o(a)(1);

c. An award of statutory damages pursuant to 15. U. S. C. §§1681n(a)(1) and 1681o(a)(1); and

d. An award of punitive damages, as allowed by the Court pursuant to 15 U. S. C. § 1681n(a)(2); and

e. Costs and reasonable attorneys' fees pursuant to 15 U. S. C. § 1681n(a)(3) and §1681o(a)(2); and

f. All prejudgment and post-judgment interest as may be allowed under the law; and

g. Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

DATED this 15th day of JANUARY, 20 25.

Respectfully Submitted,

Cynthia Wright *Pro Se*

COPY of the Lawsuit sent this _____ day of _____, 20____.

to:

C T Corporation System (Experian)
289 S. Culver Street
Lawrenceville, GA 30046-4805

Corporation Service Company (TransUnion)
2 Sun Court
Suite 400
Peachtree Corners, GA 30092

Kent E. Mast (Equifax)
1550 Peachtree Street NW
Atlanta, GA 30309